**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------

IN RE: APPLICATION OF OOO                    15 Mc 290 (JGK)
PROMNEFTSTROY FOR AN ORDER TO
CONDUCT DISCOVERY FOR USE IN A               OPINION AND ORDER
FOREIGN PROCEEDING

------------------------------------------------

**JOHN G. KOELTL, District Judge:**

OOO Promneftstroy ("Petitioner" or "PNS") submitted an
application, pursuant to 28 U.S.C. § 1782, for an order
authorizing the deposition of Eric Wolf.  The petitioner argues
a deposition of Wolf is necessary for several legal proceedings
in the Netherlands between the petitioner and entities
associated with the former OAO Yukos Oil Company ("Yukos Oil")
and its affiliates.  For the reasons discussed below, the
petitioner's application is granted.

                                    **I.**

This application is the latest chapter in a long and
complex litigation history related to Yukos Oil, a major Russian
conglomerate that went bankrupt about a decade ago.  See
generally Bos Decl. ¶¶ 13-16.  The petitioner is a Russian
closed joint stock company and the owner of Yukos Finance, B.V.,
a former subsidiary of Yukos Oil.  Bos Decl. ¶ 11.  PNS has
brought a proceeding in the Netherlands against two Foundations
(Stichtings), Administratiekantoor Yukos International

("Foundation I") and Stichting Administratiekantoor Financial Performance Holdings ("Foundation II") (collectively, the "Foundations"), certain directors of the Foundations, GML Limited, which was a Yukos Oil shareholder, and others.  See Bos Decl. ¶¶ 3, 17, 19.  In brief, PNS alleges that the defendants were engaged in the improper distribution of Yukos Oil's assets. It claims they ignored their debtor obligations and improperly distributed approximately $250 million to GML and that the directors of Foundation II withheld 10 percent of that distribution for their own personal profit.  See generally Bos Decl. ¶¶ 19-24.

In connection with these claims, PNS seeks to depose Eric Wolf.  Wolf has a relationship with Leonid Nevzlin, a former Yukos executive now living in Israel who is the primary shareholder of GML.  See Bos Decl. ¶ 33.  The petitioner claims Wolf has unique and direct personal knowledge of the circumstances and agreements surrounding the contested distribution of funds, while Wolf claims that he possesses no discoverable information.

Originally, PNS sought both to depose Wolf and to subpoena documents, but at a hearing on September 30, 2015, the petitioner withdrew its document subpoena and clarified that it seeks only to depose Wolf.  See Sept. 30, 2015 Tr. at 3.  PNS further clarified that it seeks to depose Wolf on only five

2

subjects: (1) the basis for the alleged $250 million advance payment to GML by the Foundation Directors; (2) the basis for the 10 percent of that payment that the petitioner alleges was retained by the Directors; (3) Wolf's awareness of the Foundation's past payments, if any, or future plans to make such payments; (4) the termination by the Foundations of Director Bruce Misamore related to the $250 million distribution; and (5) a recent global settlement discussion among the various parties as it relates to the other subjects.  See id. at 29-31, 43-44; see also Sept. 17, 2015 Tr. at 21.

PNS has been involved in a variety of other suits related to the Yukos bankruptcy in the Netherlands with contested relevance to this action, as recounted by the parties' opposing experts.  See Bos Decl. ¶¶ 25-30; Drop Decl. ¶¶ 4-18.  Most immediately, PNS seeks the Wolf deposition for a summary proceeding before a Dutch Court on October 8, 2015 where the $250 million is at issue.  Bos Decl. ¶ 27, Sept. 30, 2015 Tr. at 5-6.  There, PNS says it will seek an order against the Foundations to (1) direct the Foundations to repay and/or ensure repayment of the allegedly unlawful distributions made by the Dutch Foundations to GML, among others; and (2) order the Foundations not to make any further distributions until such time that the legal questions of the ownership of Yukos Finance

B.V. has been fully and finally settled in a Dutch court.  See Bos Decl. ¶ 27.

## II.

Under 28 U.S.C. § 1782, "[t]he district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal."  28 U.S.C. § 1782(a). There are three statutory prerequisites for this relief.  First, the person from whom discovery is sought must reside or be found in the district of the district court where the application is made; second, the discovery must be for use in a proceeding before a foreign tribunal; and third, the application must be made by the foreign tribunal or "any interested person."  Schmitz v. Berstein Liebhard & Lifshitz, LLP, 376 F.3d 79, 83 (2d Cir. 2004) (international quotation marks and citation omitted); see also In re Application of OOO Promnefstroy for an Order to Conduct Discovery for Use in a Foreign Proceeding, No. M 19-99 (RJS), 2009 WL 3335608, at *4 (S.D.N.Y. Oct. 15, 2009) ("PNS I").

Once these statutory requirements are met, the district court has wide discretion whether to issue discovery orders pursuant to § 1782(a).  See id.  The district court should weigh four discretionary factors:

(1) Whether the documents or testimony sought are within the foreign tribunal's jurisdictional reach, and thus accessible absent § 1782 aid;
(2) The nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance;
(3) Whether the § 1782 request conceals a[n] attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States; and
(4) Whether the subpoena contains unduly intrusive or burdensome requests.

In re Microsoft Corp., 428 F. Supp. 2d 188, 192-93 (S.D.N.Y. 2006) (citing Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S. 241, 264-65 (2004)); see also PNS I, 2009 WL 3335608, at *4-5.  "[D]istrict courts must exercise their discretion under § 1782 in light of the twin aims of the statute: 'providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts."  Schmitz, 376 F.3d at 84 (quoting In re Application for an Order Permitting Metallgesellschaft AG to take Discovery, 121 F.3d 77, 79 (2d Cir. 1997)).

### III.

It is undisputed that the three statutory requirements for Section 1782 are met in this case.  It is clear that Wolf resides in the Southern District of New York, that his testimony is sought for use in a foreign proceeding---the summary

proceeding on October 8, 2015 in the Netherlands---and that PNS
is an "interested" party---indeed, the moving party in the Dutch
proceeding.  See Sept. 30, 2015 Tr. at 8.  Accordingly, PNS has
satisfied the technical requirements of § 1782, and the Court
proceeds to "consider whether the purposes of § 1782 are best
served by approving [PNS's] application."  PNS I, 2009 WL
3335608, at *5.

The first discretionary factor asks the Court to evaluate
whether the documents or testimony sought by the application are
within the foreign tribunal's jurisdictional reach, and thus
accessible without resort to § 1782.  See id.; Microsoft Corp.,
428 F. Supp. 2d at 192.  PNS argues that there exist no means to
take or compel Mr. Wolf's testimony in the Netherlands.  Wolf
argues that the information about which Wolf would testify is
within the reach of the Dutch courts, even if Wolf himself is
not.  PNS seeks to question Wolf, a non-party to the Dutch
action, about his knowledge of alleged wrongdoing with regard to
the Yukos distributions, and that information resides with him
---not in the Netherlands---and therefore this factor weighs in
favor of granting the application.  See Ahmad Hamad Algosaibi &
Bros. Co. v. Standard Chartered Int'l (USA) Ltd., 785 F. Supp.
2d 434, 439 (S.D.N.Y. 2011).

The second discretionary factor asks the Court to weigh the
foreign tribunal's "receptiveness" to assistance from a United

States court.  See PNS I, 2009 WL 3335608, at *7.  PNS argues
that the Dutch legal system permits evidence obtained in foreign
proceedings to be introduced by parties in both trial courts and
on appeal, see Bos Decl. ¶ 5, and Wolf does not argue that a
Dutch court would not accept evidence produced pursuant to
§ 1782.  Rather, Wolf argues only that this factor is
essentially neutral in this context.  The Court of Appeals for
the Second Circuit has instructed district courts to "consider
only authoritative proof that a foreign tribunal would reject
evidence obtained with the aid of [§] 1782."  Euromepa S.A. v.
R. Esmerian, Inc., 51 F.3d 1095, 1100 (2d Cir. 1995).  Such
proof is absent here, and therefore this factor weighs in favor
of granting the deposition.

The third discretionary factor seeks to identify "[w]hether
the § 1782 request conceals a[n] attempt to circumvent foreign
proof-gathering restrictions."  Microsoft, 428 F. Supp. 2d at
193.  PNS argues that there is no means to obtain the
information from Wolf in the Netherlands; it has not been sought
in the Netherlands; and it has not been denied there.  See Sept.
30, 2015 Tr. at 14.  Wolf argues extensively that the Dutch
courts have ruled that PNS does not have standing in these
Yukos-related actions, and, thus has no standing to seek
information or relief, and it encloses a number of translated
Dutch court rulings to buttress its arguments.  See Drop Decl.

7

Exs. 1-7.  Wolf also points to PNS I, 2009 WL 3335608, where
this court denied a prior § 1782 application by PNS for
deposition and documentary discovery.  In that case, the court
wrote that "[t]he Dutch proceedings reveal that [PNS] repeatedly
sought information relating to the bank accounts, legal actions,
and business decisions of Yukos Finance and its subsidiaries,
but that it was routinely rebuffed by Dutch courts."  PNS I,
2009 WL 3335608, at *9.

PNS, Wolf, and their experts dispute the relevance and
legal effect of the other proceedings related to the Yukos
bankruptcy that PNS has pressed in the Netherlands.  See, e.g.,
Bos Decl. ¶¶ 25-30; Drop Decl. ¶¶ 4-18.  With regard to one
particular case (referred to by Wolf as the "Main Judgment"),
where a Dutch appeals court ruled that PNS had not become a
shareholder of Yukos Finance and could not sue, the Dutch
Supreme Court later reversed the case and remanded it.  Wolf
disputes the scope of the Dutch Supreme Court's vacatur and
claims a lower court judgment against PNS still stands.  See
Sept. 30, 2015 Tr. at 37-38.

As an initial matter, PNS I does not control the outcome
here.  There, the very documents that were being sought in a
§ 1782 application had been sought in the Netherlands and been
denied by the courts there.  See PNS I, 2009 WL 3335608, at *9
(PNS "has repeatedly made entreaties to various Dutch courts to

8

get the same information it now seeks, and it has been
rebuffed.") That is not the case here, where no deposition has
been sought from Wolf in the Netherlands, and, indeed, where it
would appear to be impossible to secure his testimony in the
Netherlands where he does not reside. The PNS I court also
found that the requests for documents in the proceeding were
overbroad, id., but here PNS has withdrawn its document request.

On the issue of standing, it is not within the Court's
purview to adjudge the scope, relevance, and precedential effect
of Dutch cases on later Dutch proceedings. As the Court of
Appeals has held, "it is unwise---as well as in tension with the
aims of [§] 1782---for district judges to try to glean the
accepted practices and attitudes of other nations from what are
likely to be conflicting and, perhaps, biased interpretations of
foreign law." Euromepa, 51 F.3d at 1099. While a "'grant of
discovery that trenched upon the *clearly established* procedures
of a foreign tribunal would not be within section 1782,'" the
Court of Appeals does "not read the statute to condone
speculative forays into legal territories unfamiliar to federal
judges. Such a costly, time-consuming, and inherently
unreliable method of deciding section 1782 requests cannot
possibly promote the 'twin aims' of the statute." Id. at 1099-
100 (quoting John Deere Ltd. v. Sperry Corp., 754 F.2d 132, 135
(3d Cir. 1985)) (emphasis in original).

In this case, Wolf's own expert concedes that "[c]ourts in the Netherlands do not preclude submission of any material, so [PNS] may present whatever evidence it likes related to the proceedings on October 8." Drop Decl. ¶ 11.  The Dutch court will address the standing issue at the outset and "will not consider any such evidence unless [PNS] has standing."  Id. That is a determination for the Dutch court to make, and this Court takes no position on the matter.  See John Deere Ltd., 754 F.2d at 136 ("To require that a district court undertake a more extensive inquiry into the laws of the foreign jurisdiction would seem to exceed the proper scope of section 1782."). Accordingly, this discretionary factor weighs in favor of granting the application.

The fourth and final discretionary factor asks the court to be mindful of overly intrusive or burdensome discovery requests. See Microsoft, 428 F. Supp. 2d at 193.  PNS argues that the application is not unduly intrusive or burdensome because the single deposition it seeks is directly relevant to the claims to be asserted in the Netherlands, is not protected from disclosure by any known privilege or doctrine, and is otherwise not readily obtainable.  PNS also proffers several emails, see Basdekis Decl. Exs. A-C, to support the argument that Wolf has been involved in the GML distribution and that he has been in regular communication and coordination with GML and the Foundations.

10

The emails suggest Wolf was negotiating the terms of a global settlement on behalf of Yukos shareholders.  In one, he claims to "speak on behalf of the beneficiaries. Talking to me [is the] same as talking to Leonid [Nevzlin] and his former partners [in GML]. They gave me the mandate."  Basdekis Decl., Ex. A at 1.  In another he describes how he "on behalf of the beneficiaries have made our recommendations to [the] Yukos [B]oard."  Basdekis Ex. B at 5.  And in a third email, he described to another person how the assets would be distributed.  Basdekis Ex. C at 3.  Wolf argues that he is not associated with Yukos Finance, the Foundations or even GML and only knows Nevzlin as a client and friend.  See Resp't Eric Wolf's Resp. in Opp'n at 16.

    At the September 30 hearing, counsel for Wolf raised questions about the provenance and veracity of the emails, see Sept. 30, 2015 Tr. at 40-41, but in supplemental declarations, both sides agreed that the emails in question were filed with the Dutch Court by the defendants in that proceeding in advance of the October 8 proceedings.  See Basdekis Supp. Decl. ¶ 18, Bos. Second Supp. Decl. ¶ 14, Drop Supp. Decl. ¶ 2.

    In light of the connection suggested by these emails between Wolf and Yukos Finance, the Foundations, and GML, a single deposition of Wolf for the limited purposes described above would not be unduly burdensome.  Indeed, part of the deposition is about subjects that the parties allied with Wolf

put in issue by submitting the emails to the court in the Netherlands.  See In re Application of Gemeinshcaftspraxis Dr. Med. Schottdorf, No. Civ. M19-88 (BSJ), 2006 WL 3844464, at *8 (S.D.N.Y. Dec. 29, 2006) (approving application seeking documents relating to the creation of a single report by consulting firm); In re Servicio Pan Americano de Proteccion, 354 F. Supp. 2d 269, 275 (S.D.N.Y. 2004) (request not burdensome where petitioner sought "documents related to HSBC's insurance coverage for a single loss on a single day").

Accordingly, all four of the discretionary factors counsel in favor of granting PNS's application.

## IV.

For the reasons discussed above, the § 1782 application to depose Eric Wolf is **granted**.  The deposition should take place on or before October 5, 2015.

**SO ORDERED.**


**Dated:**     **New York, New York**
          **October 2, 2015**          _____/s/_____
                                  **John G. Koeltl**
                          **United States District Judge**